NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD E. ALLOCCA, | : | |
| | : | |
| Plaintiff/Counterclaim | : | **OPINION** |
| Defendant, | : | |
| | : | Civ. No. 05-0366 (WHW) |
| v. | : | |
| | : | |
| WACHOVIA, WACHOVIA INSURANCE | : | |
| SERVICES, INC., WACHOVIA | : | |
| CORPORATION, WILLIAM BITTNER, | : | |
| JOHN KLUXEN, individually and in their | : | |
| capacities as employees of WACHOVIA, G. | : | |
| KENNEDY THOMPSON, individually and | : | |
| in his capacity as chairman, president and | : | |
| CEO of WACHOVIA, and ROBERT METZ, | : | |
| individually and in his capicity as an | | |
| employee of WACHOVIA | | |
| | | |
| Defendants. | | |

**Walls, District Judge**

Presently before the court are two motions, plaintiff Richard E. Allocca's ("Plaintiff")
motion to remand and defendant G. Kennedy Thompson's motion to dismiss. Pursuant to Fed.
R. Civ. P. 78, the motions are decided without oral arguments. The Court denies Plaintiff's
motion to remand and grants defendant Thompson's motion to dismiss.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff is an insurance broker, commonly referred to as an insurance producer, who
entered into a Producer Employment Agreement (the "Agreement") with non-parties MJ
Lieberman & Company and Spectrum Insurance Group dated January 1, 1997.  At some point,

NOT FOR PUBLICATION

defendant Wachovia Insurance Services, Inc., a subsidiary of Wachovia Corporation (collectively

"Wachovia"), became the successor-in-interest to the Agreement with Plaintiff.  Among other

things, the Agreement outlines Plaintiff's compensation for employment and the parties' rights

with respect to clients serviced under the Agreement. Of particular relevance, Paragraph 8 of the

Agreement deals with Plaintiff's benefits and expenses, providing that,

> [d]uring the employment period, producer shall be entitled, at no expense to
> producer, to participate in and receive benefits under the company's group, life,
> health and dental plans, if any, in accordance with the terms and conditions of
> such plans as may from time to time be maintained by, or cover employees of, the
> company.  In addition, during the employment period the producer may (I)
> participate in the company's group long term disability plan (at a cost to producer
> equal to 50% of the cost of such participation through the company) . . . in
> accordance with the terms and conditions of such plans as may from time to time
> be maintained by, or cover employees of, the company.

On January 21, 2004, Plaintiff mailed a letter to Mr. Thompson, the chairman, president

and CEO of Wachovia, that outlined allegations against Mr. Thompson and the other defendants

for breach of contract, breach of fiduciary duty, defamation and age and ethnicity discrimination.

On April 14, 2004, Wachovia, through counsel, responded to Plaintiff's letter denying the

allegations made by Plaintiff, and shortly thereafter, on May 17, 2004, Wachovia terminated the

Agreement, but not Plaintiff's employment.

Plaintiff filed this suit in New Jersey Superior Court, Law Division, Morris County, on

December 9, 2004 alleging multiple state law claims including breach of the Agreement and

violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*  Defendants

removed the case to this Court on January 19, 2005 pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

§ 1337 claiming that the Fourth Count of Plaintiff's Verified Complaint alleges a federal claim

-2-

NOT FOR PUBLICATION

arising under the Employee Retirement Income Security Act, 29 U.S.C. 1001 *et seq.* ("ERISA").[1]

Shortly thereafter, Plaintiff filed the present motion to remand the case to state court and

defendant G. Kennedy Thompson filed a motion to dismiss alleging a lack of personal

jurisdiction. The Court addresses the question of its subject matter jurisdiction before deciding

Mr. Thompson's motion to dismiss.

## II. DISCUSSION

### A. *Motion to Remand*

In removing this case, defendants asserted that federal jurisdiction is appropriate based on

complete preemption under the ERISA civil enforcement provision, Section 502(a), 29 U.S.C. §

1132(a) (hereinafter "Section 502(a)"). In his motion for remand, Plaintiff asserts that removal

was improper based on the "well-pleaded complaint" rule, or alternatively that the dispute

between the parties involves a contractual agreement that does not implicate the civil

enforcement provisions of Section 502(a).

### 1. **Standard of Review**

The Supreme Court has established a widely recognized exception to the general

requirement that federal court jurisdiction must be alleged on the face of the complaint. In cases

where Congress so pervasively occupies a field, any claim that comes within the scope of federal

law is deemed to "arise under" federal law notwithstanding the nature of the claim. Metropolitan

Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); see also Pryzbowski v. U.S. Healthcare, Inc., 245

---

[1] Most recently, Allocca amended his complaint to add counts Sixteen through Twenty-Four and defendant Robert Metz. Each of the new counts seeks judgment against all defendants for "lost fringe benefits, medical, hospital and dental coverage . . . ."

NOT FOR PUBLICATION

F.3d 266 (3d Cir. 2001). Federal courts have long recognized that ERISA is one of the statutes

that includes an expansive preemption provision such that state law causes of action are

preempted and removable to federal court.  See Alessi v. Raybestos-Manhattan, Inc., 451 U.S.

504 (1981).

Congress enacted the statutory requirements of ERISA to "protect . . . the interests of

participants in employee benefit plans and their beneficiaries" and to "provid[e] for appropriate

remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).  This

necessitated a uniform regulatory regime over employee benefit plans, including "an integrated

system of procedures for enforcement." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S.

134, 146 (1985). The enforcement trigger of ERISA is codified in Section 502(a).[2]  The ERISA

civil enforcement mechanism is one of those provisions with such "extraordinary pre-emptive

power" that it "converts an ordinary state common law complaint into one stating a federal claim

for purposes of the well-pleaded complaint rule." Metropolitan Life, 481 U.S. at 65-66.  As the

Supreme Court noted in Pilot Life Ins. Co. v. Dedeaux:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement
> scheme that represents a careful balancing of the need for prompt and fair claims
> settlement procedures against the public interest in encouraging the formation of
> employee benefit plans. The policy choices reflected in the inclusion of certain

---

[2]ERISA § 502(a)(1)(B) provides:

A civil action may be brought-(1) by a participant or beneficiary . . . (B) to recover
benefits due to him under the terms of his plan, to enforce his rights under the
terms of the plan, or to clarify his rights to future benefits under the terms of the
plan.

29 U.S.C. § 1132(a)(1)(B).

**NOT FOR PUBLICATION**

> remedies and the exclusion of others under the federal scheme would be
> completely undermined if ERISA-plan participants and beneficiaries were free to
> obtain remedies under state law that Congress rejected in ERISA. 'The six
> carefully integrated civil enforcement provisions found in § 502(a) of the statute
> as finally enacted . . . provide strong evidence that Congress did not intend to
> authorize other remedies that it simply forgot to incorporate expressly.'

481 U.S. 41, 54 (1987) (quoting Russell, 473 U.S. at 146). Extending this holding to the scope

of preemption under Section 502(a), the Supreme Court recently held that "any state-law cause of

action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts

with the clear congressional intent to make the ERISA remedy exclusive and is therefore

pre-empted." Aetna Health Inc.v. Davila, 124 S.Ct. 2488, 2495 (2004).

As such, a participant or beneficiary who can bring suit under Section 502(a)(1)(B) for

benefits promised to him under the terms of the plan, to "enforce his rights" under the plan, or to

clarify any of his rights to future benefits is subject to federal court jurisdiction. Likewise,

Section 502(a)(1)(B) preempts a state law cause of action when "interpretation of the terms of

[plaintiff's] benefit plan forms an essential part of [plaintiff's state law claims]." Id. at 2498.

### 2. **Analysis**

Here, Plaintiff has alleged a common law claim for breach of contract. In Count Four of

his Verified Complaint, Plaintiff alleges that Paragraph 8 of the Agreement did not require him to

pay for benefits that were provided through Wachovia's company benefit plans which are subject

to ERISA.[3] Additionally, Plaintiff's more recent Amended Complaint contains new counts that

---

[3] The Court notes that Plaintiff does not dispute that the relevant plans that are referenced
in his Verified Complaint are covered by ERISA. After a review of the plan documents, the
Court determines that Wachovia's life, health, dental and disability plans are covered by ERISA.

-5-

**NOT FOR PUBLICATION**

seek judgment for "lost fringe benefits, medical, hospital, and dental coverage." As such,

Plaintiff seeks compensatory damages and an accounting of the extra sums that Plaintiff was

allegedly required to provide under the Agreement. In effect, Plaintiff seeks a determination of

the difference between the benefits provided by the Agreement and those provided by Wachovia

to all of its employees under its ERISA governed plans. In order to grant this relief, the Court

must look to Wachovia's ERISA covered plans, as those plans are expressly incorporated into the

Agreement. As such, "interpretation of the terms of [Plaintiff's] benefit plan forms an essential

part" of his Fourth count and properly vests this court with jurisdiction. Davila, 124 S.Ct. at

2498.

      An instructive example of the broad reach of ERISA's federal preemption that mirrors the

circumstances of this case is the Second Circuit's opinion in Smith v. Dunham-Bush, 959 F.2d 6

(2d Cir. 1992). In Smith, the court considered whether a breach of contract claim, involving an

oral agreement that provided plan benefits in excess of the defendant's ERISA plan, was a state

law claim that was removable under Section 502(a).[4] The court rejected the plaintiff's defense

that the action involved only benefits under his oral contract and not those of the defendant's

ERISA plan, and explicitly found that the existence of the defendant's pension plan was

"inseparably connected to any determination of liability under state law." Id. at 11. Moreover,

---

    [4] The Court notes that Smith also involved a determination of whether the plaintiff's
state law breach of contract claim was preempted by ERISA and therefore dismissible under
Section 514 of the Act. The Smith court first analyzed whether it had removal jurisdiction prior
to dismissing the claim. In the present motion, defendants have not moved this Court to dismiss
Plaintiff's claim as preempted pursuant to Section 514, and the Court addresses only the issue of
its jurisdiction.

**NOT FOR PUBLICATION**

the court found that "Smith's suit essentially seeks 'to clarify his rights to future benefits' based on the oral assurances from [defendant] to supplement those benefits." Id.

Plaintiff's breach of contract claim, although not based on an oral agreement, asks for the same relief sought by the Smith plaintiff. Plaintiff seeks to enforce an agreement that provides benefits above and beyond the defendants' ERISA covered plans. Thus, a determination of what those benefits are under New Jersey contract law, will be "inseparably connected" to a determination of the benefits provided by the ERISA plans and necessarily requires a determination of Plaintiff's benefits due under the terms of defendants' ERISA plans as incorporated through the Agreement. Plaintiff's newly added counts seek similar relief which necessitate a determination by this Court of Plaintiff's rights due under the ERISA covered plans. As such, Plaintiff's claim for breach of contract is removable to federal court based on its clear relationship to defendants' ERISA covered plans, providing Plaintiff with a remedy that comes within the scope of ERISA civil enforcement provisions.

In further support of his motion to remand, Plaintiff asserts that ERISA's grant of concurrent jurisdiction, 29 U.S.C. §1132 (e)(1), should be a factor in considering whether remand is proper. As Plaintiff plainly acknowledges, Congress' grant of concurrent jurisdiction to state and federal courts to decide cases brought under ERISA is not grounds for remand. See Chilton v. Savannah Food & Industries, Inc., 814 F.2d 620, 623 (11th Cir. 1987) (noting that concurrent jurisdiction does not foreclose removal of ERISA actions); see also Bartlett v. Pennsylvania Blue Shield, 2003 WL 21250587 (E.D. Pa. Mar. 31, 2003) (denying plaintiff's motion to remand premised on the state court's concurrent jurisdiction); Lamonica v. Guardia

-7-

**NOT FOR PUBLICATION**

<u>Life Ins. Co. of America</u>, 1997 U.S. Dist. LEXIS 1988, at *10-12 (D.N.J. Feb. 20, 1997) (citing

cases); 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any

civil action brought in a State court of which the district courts of the United States have original

jurisdiction, may be removed by the defendant or the defendants"). As discussed, defendants

properly removed this action pursuant to Section 502 (a) of ERISA. Given the broad preemption

authority of Section 502(a), the state court's concurrent jurisdiction has no bearing on this

Court's decision to remand.

Plaintiff also urges that removal is inappropriate under Section 502(a) because Plaintiff

lacks standing to assert an ERISA claim. Plaintiff alleges that he was never an employee and

therefore never covered under any of Wachovia's ERISA plans. In support of this claim,

Plaintiff points to an April 14, 2004 letter sent by defendant William Bittner to Plaintiff's

counsel which Plaintiff alleges "clearly indicates" that he is not an employee. Specifically,

Plaintiff quotes the April 14 letter, which states that "only salaried employees are entitled to

participate in the incentive-compensation plan . . . Mr. Allocca is not now and never was eligible

to participate in those plans," to support his conclusion that he was never an employee and

therefore not covered by Defendants' ERISA plans. In reaching this conclusion, Plaintiff has

misinterpreted the letter. The letter merely notes that certain plans were unavailable to Plaintiff,

based on his status as a non-salaried employee, but nowhere suggests that the other unmentioned

ERISA plans were not available to Plaintiff. Indeed, the letter explicitly recognizes that Plaintiff

has "participated in certain ERISA-covered benefit plans." Plaintiff would like this Court to read

the letter's limitations regarding his eligibility to contribute to the incentive-compensation plan

NOT FOR PUBLICATION

into his ability to contribute to the other ERISA plans such as group, life, health and dental.
However, such a reading conflicts with the express contents of the letter. Nothing in the April 14
letter suggests that plaintiff was not an eligible plan participant in some of defendants' ERISA
plans. The Court finds that Plaintiff has standing under the ERISA civil enforcement provision.
29 U.S.C. § 1132(a)(1).

For the foregoing reasons, the Court finds that it has proper jurisdiction over Plaintiff's
breach of contract claim pursuant to ERISA § 502(a)(1)(B) and denies plaintiff's motion to
remand.

*B. Motion to Dismiss for Lack of Personal Jurisdiction*

Having recognized that this Court has proper jurisdiction to hear the Complaint, the
Court now turns to Mr. Thompson's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for
lack of personal jurisdiction.

1. **Standard of Review**

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal
jurisdiction over non-resident defendants to the extent authorized under the law of the forum
state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d
28, 31 (3d Cir.1993). New Jersey's long arm statute provides for personal jurisdiction as far as is
permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Ct. R. 4:4-4;
Carteret Savings Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); DeJames v.
Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981). The question of whether this

NOT FOR PUBLICATION

Court has jurisdiction over defendant Thompson is determined by federal constitutional law.  See
Mesalic v. Fiberfloat Corp., 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state
defendant only where "the defendant purposefully avails itself of the privilege of conducting
activities within the forum State, thus invoking the benefits and protections of its laws." Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235
(1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed
himself of the forum state. See Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that the defendant has purposefully availed itself of that state, a plaintiff may
rely upon a defendant's specific contacts with the forum state.  Personal jurisdiction pursuant to
such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is
related to or arises of out the defendant's contacts with the forum. See Helikopteros Nacionales
de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Security Bank of
Utah, 746 F.2d 208, 211 (3d Cir. 1984).  A court must first determine whether the defendant had
the minimum contacts with the forum necessary for the defendant to have "reasonably
anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980) (citations omitted).  What constitutes minimum contacts varies with the
"quality and nature of defendant's activity." Hanson, 257 U.S. at 253. In assessing the
sufficiency of minimum contacts for personal jurisdiction, the court must focus on the
"relationship among the defendant, the forum and the litigation." Keeton v. Hustler, 465 U.S.
770 (1984).  Otherwise stated, there must be at least "a single deliberate contact" with the forum

NOT FOR PUBLICATION

state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helikopteros, 466 U.S. at 414; Hanson, 257 U.S. at 253.

Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l. Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  See World-Wide Volkswagen Corp., 444 U.S. at 292. To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies. Id. Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi Metal Industry Co.. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. Helikopteros, 466 U.S. at 416. To establish general jurisdiction

-11-

NOT FOR PUBLICATION

the plaintiff must show significantly more than mere minimum contacts with the forum state.

Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).

Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."

Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982).

The burden to produce actual evidence of the defendant's contacts with the forum state

rests on the plaintiffs. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 and

n.9 (3d Cir. 1984). See also Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 58 (3d Cir.

1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's

burden of proof).

2. **Analysis**

Defendant Thompson, a resident of North Carolina, contends that he cannot be subject to

personal jurisdiction in New Jersey based on the unsolicited contact of Plaintiff by his January

21, 2004 letter. Indeed, it is black letter law that an unsolicited contact by a plaintiff will not be

sufficient to establish specific jurisdiction. In re Cendant Corp. Derivative Action Litig. 189

F.R.D. 117, 136 (D.N.J. 1999) (WHW). Specific jurisdiction also cannot be established in

circumstances involving solitary contact by plaintiff that results in a response from the defendant

within the forum state. See Covenant Bank for Savings v. Cohen, 806 F. Supp. 52, 55 (D.N.J.

1992) (holding that unsolicited phone call by plaintiff to defendant did not support finding of

specific jurisdiction because defendant's actions did not "create sufficient minimum contacts

between the nonresident defendant and the forum").

-12-

NOT FOR PUBLICATION

In opposition to defendant Thompson's motion, Plaintiff claims that the proper focus in determining personal jurisdiction should be on the effects of Mr. Thompson's response to the unsolicited contact. Specifically, Plaintiff claims that the basis of his cause of action is the alleged retaliatory conduct of defendant Thompson, and as such, the basis for jurisdiction lies in this conduct. However, Plaintiff's argument is unpersuasive. To begin with, the record does not reflect that Mr. Thompson ever actually received the correspondence at issue. While a letter was sent from Wachovia's New Jersey counsel in response to Plaintiff's original correspondence, there is no indication that the letter was sent at the direction or urging of Mr. Thompson. Even viewing the facts most favorably to Plaintiff and assuming that Mr. Thompson had orchestrated a retaliatory response against him, this effect alone does not establish the necessary contact to establish personal jurisdiction. Covenant Bank, 806 F. Supp. at 56.

Moreover, in Covenant Bank, the court rejected the argument that a plaintiff could establish personal jurisdiction over a nonresident defendant based on the effects of the defendant's response to the unsolicited contact of the plaintiff, the same argument advanced here by Plaintiff. The court's analysis is instructive:

> It is true that due process is satisfied when a forum asserts jurisdiction over a defendant who undertakes affirmative acts which the defendant should reasonably foresee would lead to economic damages within the forum. See Calder v. Jones. But the Calder "effects" test requires as a predicate for its application that the nonresident defendant purposefully and deliberately direct his act toward the forum state. Viewing the facts most favorably for the plaintiff, the court assumes that defendants' alleged act of misrepresentation was intentional. It is, however, necessary to distinguish between a defendant's acts which: (1) are aimed at a plaintiff who is located in the forum and (2) are aimed at the forum itself. In the first instance, defendant's actions, directed at the plaintiff, have only an unintended effect in the forum, such as economic damage. In the second instance, the defendant performs an act with "the very purpose of having an effect" in the

**NOT FOR PUBLICATION**

> forum. Only the latter kind of intentional act constitutes a purposeful and
> deliberate contact with the forum which makes it fair and reasonable for the forum
> to exercise personal jurisdiction . . . .
>
> The present case clearly does not warrant a similar finding. Defendants'
> sole act was to respond to Covenant's unsolicited request for information. While
> defendants' response may have caused plaintiff damages in New Jersey,
> defendants did not perform this act with the "very purpose" of having such an
> impact in New Jersey. Accordingly, the Calder "effects" test does not apply.

Id. (citation omitted). The Court finds this analysis highly persuasive and dispositive of the issue

of specific jurisdiction here. Plaintiff cannot establish specific jurisdiction based on the "effects"

of his unsolicited contact of Mr. Thompson because any alleged retaliatory conduct on the part of

Mr. Thompson has not been shown to be directed at the forum state, New Jersey. It was not

conduct with the purpose of having an effect in New Jersey. Indeed, the thrust of Plaintiff's

allegations are that the defendants, including Mr. Thompson, mistreated him based on his age

and nationality, conduct distinctly individualized and necessarily aimed solely at plaintiff.

Plaintiff only happened to be located in the state of New Jersey. This is precisely the type of

"effects" that the Covenant Bank court rejected as establishing specific jurisdiction. Id.

Mr. Thompson also argues that the Court lacks general jurisdiction over him. The Court

agrees. To begin with, it should be noted that Plaintiff carries the burden of establishing the

defendant's contact with the forum state, Time Share Vacation Club 735 F.2d at 66 and n.9, a

burden which Plaintiff fails to establish. Moreover, Plaintiff must establish "continuous and

systematic contacts" with the forum state. Helikopteros, 466 U.S. at 416, and these facts must be

"extensive and persuasive." Reliance Steel, 675 F.2d at 589. Plaintiff does not allege any

continuous or systematic contacts with the State of New Jersey on the part of Mr. Thompson.

Mr. Thompson asserts, and plaintiff does not refute, that he has never lived, worked, owned

**NOT FOR PUBLICATION**

property, or conducted any personal business in the state of New Jersey. General jurisdiction cannot be exercised over Mr. Thompson.

Based on the Court's finding that it lacks personal jurisdiction over Mr. Thompson, the Court need not address the second prong of the personal jurisdiction analysis regarding the reasonableness of jurisdiction and whether it comports with "fair play and substantial justice." Because the Court lacks personal jurisdiction over Mr. Thompson, the claims asserted against him are dismissed.

**CONCLUSION**

It is on this ___ day of November, 2005:

ORDERED that plaintiff's motion to remand is DENIED; it is further ORDERED that defendant G. Kennedy Thompson's motion to dismiss the complaint as to him is GRANTED.

William H. Walls, U.S.D.J.

-15-